BLANCHE, Judge.
Defendant, The Insurance Company of the State of Pennsylvania, issued to plaintiff, Harold Heiman, a Livestock Transportation and Mortality Policy which insured against the death of the quarter horse, Salty Clabber. The horse died and defendant refused to pay because it claimed that plaintiff had violated Section 1 of the general conditions of the policy. The following is the text of that provision:
“GENERAL CONDITIONS
“1. NOTICE OF SICKNESS OR INJURY:
“The Assured shall at all times provide proper care and attention for each animal hereby insured. In the event of any illness, disease, lameness, injury, accident or physical disability whatsoever of or to an insured animal the Assured shall immediately at his own expense employ a qualified Veterinary Surgeon, to give proper care and to use every possible means to save the life of the animal and the Assured shall immediately give notice (PLEASE REFER TO SPECIAL ENDORSEMENT ATTACHED TO THIS POLICY FOR SPECIFIC INSTRUCTIONS) TO THE COMPANY AND/OR GENERAL AGENT WHO WILL INSTRUCT A VETERINARY SURGEON IF DEEMED NECESSARY AND ANY FAILURE BY THE ASSURED TO DO SO SHALL RENDER THE ASSURED’S CLAIM NULL AND VOID AND RELEASE THE COMPANY FROM ALL LIABILITY IN CONNECTION THEREWITH, WHETHER THE ASSURED HAS PERSONAL KNOWLEDGE OF SUCH EVENTS OR SUCH KNOWLEDGE IS CONFINED TO THE REPRESENTATIVES OF THE ASSURED OR OTHER PERSONS WHO HAVE CARE, CUSTODY AND CONTROL OF THE ANIMAL(S).” (Exhibit D-2 — Emphasis supplied)
Plaintiff filed suit to recover the full amount of the policy, together with penalties and attorney’s fees, within the purview of LSA-R.S. 22:658 as a result of the defendant’s alleged arbitrary and capricious failure to pay. The trial court rendered judgment in plaintiff’s favor for the full amount of the policy but rejected his claim for attorney’s fees. The defendant has appealed and the plaintiff has answered the appeal, claiming that the trial judge erred in refusing to award penalties and attorney’s fees.
The facts concerning the care taken of Salty Clabber are not in dispute. Whether such care amounted to a failure to comply with the foregoing provision is the sole question in the case. The trial judge has accurately described the factual situation surrounding the care and attention given by plaintiff to his horse and the events leading up to the horse’s death:
“On June 6, 1971, Mr. Heiman placed the horse, Salty Clabber, in a pasture that he owned on Airline Highway near Perkins Road. The pasture, according to expert testimony, was in good condition, with plenty of available grass, water, and minerals. The horse, a prime *187 quarter-horse stallion, was placed there for the purpose of pasture-breeding some mares who were also present at that time. After June 6, 1971, Mr. Heiman visited the pasture daily until June 12, 1971, when he left Baton Rouge on a business trip. According to his testimony, Mr. Heiman made these daily visits partly out of his love for Salty Clabber and his desire to see him frequently, and partly because he was concerned about another horse, a filly who had suffered from a form of diarrhea. He also returned daily to perform work needed in and around the pasture to keep it in prime condition.
“On June 15, 1971, Mr. Heiman returned to the pasture in the company of Dr. M. C. Helouin, a veterinarian, primarily to check on the filly. When they arrived at the pasture, Mr. Heiman noticed that Salty Clabber was not, as was usual, near the mares. He immediately became concerned and began a search for the horse. Shortly thereafter, Salty Clabber was found dead near an oak tree, his body badly decomposed and ravaged by scavengers.
“Dr. Helouin testified that because of the condition of the corpse, there was no possibility of determining the cause of death by performing an autopsy. Therefore, the final cause of death remains unknown, except that Dr. Helouin ruled out gunshot wound as a possible cause.
jjj if: jJs
“ * * * The plaintiff claims that his actions conformed to the policy clause, i. e., that he did provide proper care and attention for Salty Clabber at all times. From his testimony, it is apparent that Mr. Heiman had a great love for this horse. He made certain that the pasture was well watered, placed salt and mineral blocks out for the horses to lick, and maintained a fence and cross-fence system of non-barbed wire for the further protection of the horses. He even went to the extent of consulting the L. S.U. Agricultural Extension Service about proper grasses for the pasture, and followed' their suggestions explicitly by planting the proper grasses, to insure a good forage for the animals.
“From the expert testimony offered by the plaintiff, and uncontradicted by the defendant, such care was considered. excellent. Furthermore, it was the opinion of these expert witnesses that leaving a horse in such a pasture for up to 72 hours would not be unusual or out of the ordinary.[1] In view of this, and in view of the fact that no more than 36 hours elapsed between the time of Mr. Hei-man’s departure and the estimated time of the horse’s death, the Court can only conclude that Mr. Heiman did give proper care and attention to Salty Clabber at all times. Therefore, the plaintiff has proven compliance with the contract by a preponderance of the evidence.” (Written Reasons for Judgment, Record, pp. 23-25)
The overwhelming weight of the evidence .showing the excellent nature of the care and attention given by plaintiff to his horse leads us to conclude, as did the trial judge, that plaintiff did, in fact, at all times provide proper care and attention to the insured animal as required by the foregoing provision of the policy. There is not a scintilla of evidence in the record to show that plaintiff ever for one moment neglected the animal.
To support defendant’s' denial of coverage, it relies on Black’s Law Dictionary, Fourth Edition, which defines “shall” as mandatory and Webster’s New International Dictionary, Second Edition (1950), defining “attention” as “observation or consideration with a view to action.” In his brief, counsel for defendant then states, *188 “The point of this case is that ‘the assured (Heiman shall (mandatory) at all times provide * * * attention (observation and consideration with a view to action.’ ” He then states, “Appellants do not contend that ‘constant observation’ is necessary but that ‘reasonable observation’ is necessary.” However, counsel later argues, after making the observation that the trial court found that plaintiff had not observed the horse for thirty-six hours, “The Trial Court has simply read out of the contract that phrase ‘at all times.’ ” We are not otherwise informed by defendant as to what is considered a reasonable observation, though it undoubtedly considers thirty-six hours as unreasonable and violative of the provision to provide attention at all times.
The phrase “at all times * * * provide attention” is not specifically defined in the policy but admittedly would encompass reasonable observation of the insured object. As previously noted, we have found from the evidence that plaintiff’s observation of his horse was reasonable.
We do not consider that the policy provision is ambiguous and do not feel called upon to make a dissertation on rules governing the construction of insurance contracts. We simply find that the defendant is in error in assuming that plaintiff’s failure to observe his horse for some thirty-six hours amounts to failure to provide proper care and attention to the insured animal at all times.
Defendant also contends that plaintiff did not comply with that provision of the policy which required that in the event of any illness, disease, lameness, accident or physical disability whatsoever to the insured animal that he immediately, at his own expense, employ a qualified veterinary surgeon to give proper care and to use every possible means to save the life of the animal and further to give immediate notice to the company. Immediate notice of the animal’s death was given to the company, but inasmuch as Salty Clabber was dead when discovered, no notice could have possibly been given to a qualified veterinary surgeon to give proper care to attend the animal. We reject this contention as being without merit, because it was never established how Salty Clabber met his death, and inasmuch as he was dead when found, it was an obvious impossibility for plaintiff to have complied with the provision.
The plaintiff has answered the appeal and assigns as error the failure of the trial' judge to award penalties and attorney’s fees as provided for by LSA-R.S. 22:6S8.[2] With regard thereto the trial judge commented:
“ * * * They [The Insurance Company of the State of Pennsylvania] apparently felt that the plaintiff had failed to meet the terms of the policy, and it cannot be said that this belief was unreasonable. * * * ” (Written Reasons for Judgment, Record, p. 26)
We believe this conclusion to be manifestly erroneous. When defendant made its decision to deny coverage, it was in possession of a proof of loss executed by the plain *189 tiff, a death certificate, a photograph of the insured animal, a registration certificate and a statement from the insured. Other than the foregoing, the company made no further investigation to determine if plaintiff failed at all times to provide proper care and attention for the insured animal, taking the position that if he failed to observe the horse from the time he left town until the horse died some time the following day, he had failed to comply with the policy provision. Defendant made no attempt in its investigation to determine whether the failure to observe a quarter horse for some thirty-six hours under conditions of care such as those provided for Salty Clabber amounted to neglect. Defendant argues, “This is a case, turning on particular wording of the policy as applied to the actions of Mr. Heiman, the insured. * * * Defendant believed and still believes that the care provided ‘Salty Clab-ber’ was not that required under the policy itself.” If defendant misconstrued its own policy provisions, it did so at its own risk.
In Albert v. Cuna Mutual Insurance Society, 255 So.2d 170 (La.App.3rd Cir. 1971), the plaintiff sought to recover disability benefits under a group insurance policy. The defendant insurance company, though aware of the facts relating to plaintiff’s disability, refused to make payment on the grounds that even though plaintiff was disabled to perform the duties of his occupation at the time the policy was issued, he could do other types of work and, therefore, was not disabled within the meaning of the policy. The Court, in assessing penalties and attorney’s fees under R.S. 22:658, stated:
“An insurer must take the risk of misinterpreting its policy provisions. If it errs in interpreting its own insurance contract, such an error will not be considered as a reasonable ground for delaying the payment of benefits, and it will not relieve the insurer of the payment of penalties and attorney’s fees. [Citations omitted]” (Albert v. Cuna Mutual Insurance Society, 255 So.2d 170, 175)
In light of the foregoing circumstances surrounding defendant’s refusal to pay within the prescribed time, we conclude that such refusal was arbitrary, capricious and without probable cause and subjects it to the payment of penalties and attorney’s fees as provided for by R.S. 22:658.
We find that R.S. 22:658 is applicable, for we consider the policy in question here (a Livestock Transportation and Mortality Policy) as a “contract other than those specified in R.S. 22:656 and 22:657,” the statutory provisions applicable to the payment of claims under life policies and health and accident policies, respectively.
With regard to attorney’s fees, counsel stipulated that attorney’s fees of $650 would be allowable through trial if plaintiff recovered. To this we add an additional $500 which we believe will fairly compensate counsel for perfecting, briefing and arguing the case on appeal.
For the foregoing reasons, the judgment of the trial court is , amended and as amended affirmed so as to grant unto plaintiff the recovery of penalties equal to 12 percent on the amount of the loss and attorney’s fees in the sum of $1,150 in accordance with the provisions of R.S. 22:658. All costs are to be borne by defendant-appellant.
Amended and as amended affirmed.

. These witnesses were Nicholas J. Dickson and Robert O. Cook, who earned tlieir livelihood from the care, maintenance and training of quarter horses.

. LSA-R.S. 22:658 provides, in pertinent part, as follows:
“All insurers issuing any type of contract other than those specified in R.S. 22:656 and 22:657 shall pay the amount of any claim due any insured * * * within sixty days after receipt of satisfactory proofs of loss from the insured * * *. Failure to make such payment within sixty days after receipt of such proofs and demand therefor, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of 12% damages on the total amount of the loss, payable to the insured * * * together with all reasonable attorney’s fees for the prosecution and collection of such loss * s}s # »